**1811-AC07345**

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

IN THE CIRCUIT COURT
SAINT CHARLES COUNTY
STATE OF MISSOURI
ASSOCIATE DIVISION

| | | |
|---|---|---|
| **DOMINIC PONTELLO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. |
| v. | ) | |
| | ) | Division |
| **NAVIENT SOLUTIONS, LLC,** | ) | |
| **F/K/A NAVIENT SOLUTIONS, INC.,** | ) | |
| **F/K/A SALLIE MAE, INC.** | ) | |
| | ) | |
| Serve at: | ) | |
| CSC-LAWYERS INCORPORATING SERVICE CO | ) | |
| 221 BOLIVAR STREET | ) | |
| JEFFERSON CITY, MO 65101 | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

<u>**PETITION**</u>

COMES NOW, Plaintiff, Dominic Pontello, and for his Petition states as follows:

<u>**INTRODUCTION**</u>

1.      This is an action for statutory and actual damages brought by an individual consumer for violations of the Telephone Consumer Protection Act of 1991("TCPA"), 47 USC 227 *et. Seq.*

2.      This is an action for actual and punitive damages brought by an individual consumer for invasion of privacy.

3.      Plaintiff demands a trial by jury on all issues so triable.

<u>**JURISDICTION**</u>

4.      This Court has jurisdiction of the TCPA claim under 47 U.S.C. § 227 (3)(b). Venue is appropriate in this Court because Defendant placed prohibited telephone calls to

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

Plaintiff at Plaintiff's phone located in Saint Charles County, Missouri.

5.      This Court has jurisdiction of the state law claim of invasion of privacy pursuant to 28 U.S.C. § 1367 because the conduct giving rise to the claim occurred in Saint Charles County, Missouri.

## PARTIES

6.      Plaintiff is a natural person currently residing in Saint Charles County, Missouri.

7.      Defendant Navient Solutions, LLC, ("Navient") is a foreign corporation with its principal place of business in Reston, VA.

8.      Defendant Navient Solutions, LLC, d/b/a the Navient Corporation, has been formerly known as: Sallie Mae, Inc., Sallie Mae, and Navient Solutions, Inc.

9.      Navient is the largest student loan servicer in the United States. Navient services the loans of more than 12 million borrowers, including over 6 million customer accounts under a contract with the U.S. Department of Education, and more than $300 billion in federal and private student loans.

10.     Navient's principal responsibilities as a servicer include managing borrowers' accounts; processing monthly payments; assisting borrowers to learn about, enroll in, and remain in alternative repayment plans; and communicating directly with borrowers about the repayment of their loans.

11.     Following a corporate reorganization in 2014, Navient Corporation was the successor to SLM, Inc., d/b/a Sallies Mae, and Navient, LLC. As part of this reorganization, Navient Corporation assumed certain liabilities related to the servicing and collection activities of SLM, Inc. d/b/a Sallie Mae, Navient, LLC, and their subsidiaries.

12.     Defendant Navient services and collects on student loans acquired in its office

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

after the loans were delinquent and defaulted upon with the loan originator or original servicer.

13.     SLM, Inc., d/b/a Sallie Mae, was awarded the servicing-contract with the U.S. Department of Education in 2009, and that contract continues to be in force to the present (subject to various modifications that the parties to that contract have executed).  All documents related to that contract were signed in the name of SLM, Inc. (or Corporation), or, subsequently, Navient, LLC. Accordingly, as a result of the 2014 corporate reorganization, Navient Corporation (via its holding/parent company, Navient Solutions, LLC), is currently the entity that contracts with the U.S. Department of Education for the servicing of federal student loans, as well as being a main third-party servicer and collector of private student loan debt throughout the United States.

14.     When a student loan serviced by Navient goes into default, Navient directly and/or through its agents or persons acting on its behalf engages in collection activities as to the defaulted student loan.

15.     In connection with its servicing and collecting activities, Navient and its agents and persons acting on its behalf make telephone calls to relatives, neighbors, acquaintances and references listed in student loan applications or other documentation seeking contact and location information as to the student loan borrower.

16.     In connection with its servicing and collecting activities, Navient and its agents and persons acting on its behalf use skip trace and similar services to identify and obtain the telephone numbers of relatives, neighbors, and acquaintances of borrowers and call the telephone numbers so obtained seeking contact and location information as to the student loan borrower.

17.     Defendant Navient is a limited liability company and a "person" as defined by 47 U.S.C. § 153(10).

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

### *Telephone Consumer Protection Act*

18.    The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

19.    Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012) ("The Act bans certain practices invasive of privacy").

20.    According to findings by the FCC - the agency Congress vested with authority to issue regulations implementing the TCPA - such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided prior express consent within the meaning of the Act.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, 23 F.C.C. Rcd. 559, 565, para. 10 (2008) ("the 2008 TCPA Declaratory Ruling").

22.    At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. § 153(39).

23.    At all times relevant to this complaint, Defendant has owned, operated, and or controlled "customer premises equipment" as defined by the TCPA 47 U.S.C. § 153(16) that originated, routed, and/or terminated telecommunications.

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

24.     Defendant at all times relevant to the complaint herein engages in "telecommunications" as defined by the TCPA 47 U.S.C. § 153(50).

25.     Defendant at all times relevant to the complaint herein engages in "interstate communications" as defined by the TCPA 47 U.S.C. § 153(28).

26.     At all times relevant to this complaint, Defendant has used, controlled, and/or operated "wire communications" as defined by the TCPA 47 U.S.C. § 153(59), that existed as instrumentalities of interstate and intrastate commerce.

27.     At all times relevant to this complaint, Defendant has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

### *Invasion of Privacy*

28.     Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the FDCPA, when it states as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**
> 15 U.S.C. § 1692(a) (emphasis added).

29.     The Federal Communications Commission recognized the costs and damage to a consumer's right to privacy that robo calls created:

> Noting that Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, and that such calls can be costly and inconvenient, the Commission determined that the TCPA and its rules prohibit such calls to wireless numbers. The Commission also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of*

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

*1991*, 23 FCC Rcd 559, ¶7 (Jan. 4, 2008).

<u>**FACTS**</u>

30.     Within four years immediately preceding the filing of this lawsuit, Defendant telephoned the Plaintiff's cellular phone using an automatic telephone dialing system on numerous occasions and left artificial or pre-recorded messages on the Plaintiff's answering service in violation of the TCPA.

31.     Defendant's automated and pre-recorded messages calls to Plaintiff's cell phone (636) 541-7673, were unsolicited and unauthorized.

32.     At all times pertinent, Plaintiff is and was the subscriber to and the primary and customary user of telephone number (636) 541-7673. As such, as to each of the calls to which this Complaint pertains, Plaintiff was the "called party" whose prior express consent was required in order for Defendant Navient or its agents or any persons calling on its behalf to call that number using an Autodialer. *See Breslow v. Wells Fargo Bank, N.A*., 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B*., 746 F. 3d 1242 (11th Cir. 2014).

33.     Each of the calls to which this Complaint pertains was made using an autodialer or automatic telephone dialing system as defined by the TCPA in 47 U.S.C. § 227(a)(1) in that the equipment used by Defendant had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

34.     With respect to each of the calls answered by Plaintiff, there was a noticeable period of silence after Plaintiff answered the call before a live person joined the call on the calling party's end.

35.     This period of silence is characteristic of calls made using a predictive dialer which has been determined by the FCC to be an autodialer. *See 2003 TCPA Order, 18 FCC Rcd*

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

at 14092-93, para. 133. "In attempting to 'predict' the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either 'hang-up' on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as 'dead air.'" *2003 TCPA Order*, 18 FCC Rcd at 14101-02, para. 146. *See also id.* at n. 502.

36.     Indeed, Defendant Navient has stipulated in at least one other lawsuit that the telephone system used to call the Plaintiff was in fact an autodialer. *See McCaskill v Navient Solutions, Inc.*, Case No. 8:15-cv-1559-T-33TBM (M.D. Fla), Dkt. 107 at 11; *See also Johnson v Navient Solutions, Inc.*, Case No. 1:15-cv-0716-LJM-MJD (S.D. Ind.), Dkt. 177.

37.     Plaintiff never provided his cell phone number to Defendant and Plaintiff never gave his express written consent to be called on his cellular telephone by automatic dialed telephone calls or prerecorded messages.

38.     Plaintiff never signed any writing containing a clear and conspicuous disclosure, as required under 47 C.F.R. § 64.1200(f)(8)(i), informing the Plaintiff that by executing an agreement, Plaintiff consents to receive phone calls delivered using an automatic telephone dialing system or an artificial or prerecorded voice.

39.     Defendant's phone calls came from a number owned and operated by Defendant.

40.     Defendant knows the TCPA's prohibitions against using an autodialer and pre-recorded messages to call cell phones, and has continued to make unauthorized and prohibited phone calls despite this knowledge.

### *Violations of the TCPA*

41.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

regulates, inter alia, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an automatic telephone dialing system includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-9 (7th Cir. 2012).

42.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

43.     On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or pre-recorded message to a wireless number by a creditor or on behalf of a creditor are permitted only if the calls are made with the "prior express consent" of the called party. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

44.     The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." FCC Declaratory Ruling, 23 F.C.C.R. at 564-65 (¶10).

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

45.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff gave his express consent to Defendant to use an autodialer to call his cell phone within the meaning of the statute. See FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

46.     Directly as well as through its subsidiaries, contractors and agents, Defendant employs hundreds of persons at various call centers throughout the country. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of debts collected by Defendant.

47.     Defendant's regular business practices include making repeated phone calls, as well as sending notices, statements, bills, and other written correspondence to persons it believes responsible for paying past-due accounts.

48.     Part of Defendant's strategy for servicing student loans involves the use of an automatic telephone dialing system ("ATDS") and/or automated or prerecorded messages.

49.     Defendant uses ATDS equipment and software that has the capacity to store or produce telephone numbers to be called and which includes auto-dialers and predictive dialers.

50.     Defendant makes calls using an ATDS and/or artificial or prerecorded voice to cellular telephones whose owners have not provided express prior consent to receive such calls.

51.     Defendant never obtained express written consent from Plaintiff, pursuant to 47 U.S.C. § 227 (b)(1)(A), to place telephone calls to Plaintiff's cellular phone using an automatic telephone dialing system or to send pre-recorded messages to Plaintiff's cellular phone, (636) 541-7673.

52.     Plaintiff received numerous such illicit non-emergency pre-recorded and/or synthesized phone calls or voice messages from Defendant's automatic telephone dialing system,

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

and he was charged for these phone calls, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

53.     Defendant's phone calls for Plaintiff were placed from Defendants' automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1), from the phone number that is registered to the Defendant.

54.     Specifically, Defendant's dialing system has the capacity to store, dial, and generate phone numbers such as Plaintiff's.

### *Invasion of Privacy – Intrusion Upon Seclusion*

55.     Defendant intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of this Plaintiff by repeatedly and unlawfully attempting to collect a debt from Plaintiff by calling Plaintiff's cellular telephone without consent by Plaintiff, and thereby invaded Plaintiff's right to privacy.

56.     Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs.

57.     The conduct of Defendant in engaging in the above-described illegal telecommunications conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant that occurred in a way that would be highly offensive to a reasonable person in that position.

58.     As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages and punitive damages from Defendant in an amount to be determined at trial.

### <u>COUNT I: VIOLATION OF THE TCPA</u>

59.     Plaintiff re-alleges and incorporates by reference all prior paragraphs.

60.     Defendant has a policy, practice or procedure of placing automated and pre-recorded calls to cell phones without the prior consent of the called parties.

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

61.     In its attempts to collect the alleged debt from Plaintiff, Defendant has committed violations of the TCPA, 47 USC 227 et. seq., including, but not limited to, the following:

       a.     Placing non-emergency phone calls to Plaintiff's cellular phone without express authorized consent of the Plaintiff. 47 USC 227(b) (1) (A)(iii).

62.     Defendant's violations were negligent, or alternatively, they were willful or knowing, in violation of 47 U.S.C. § 312(f)(1).

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendants for:

A. Judgment that Defendants' conduct violated the TCPA;

B. Actual damages;

C. Statutory damages pursuant to 47 USC (b)(3); and

D. For such other relief as the Court may deem just and proper.

### <u>COUNT II: INVASION OF PRIVACY – INTRUSION UPON SECLUSION</u>

63.     Plaintiff re-alleges and incorporates by reference all prior paragraphs.

64.     The aforementioned intrusion upon seclusion by Defendant was highly offensive to a reasonable person.

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered against Defendant for:

A.     Actual damages;

B.     Punitive damages;

C.     Court costs;

D.     For such other relief as the Court may deem just and proper.

       Respectfully submitted by,

       Pontello & Bressler, LLC

       /s/ Isaac J. Bressler

       _____

Electronically Filed - St Charles Circuit Div - November 01, 2018 - 04:36 PM

Isaac J. Bressler, MO#66379
Attorney for Plaintiff
406 Boones Lick Rd
St. Charles, MO  63301
(636) 869-4170
(636) 246-0141 facsimile
ibressler@pontellolaw.com

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the Defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or prerecorded calls, emails, recordings, documents and all other tangible things that relate to the allegations herein, to the Plaintiff, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that the Defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

/s/ Isaac J. Bressler